CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY *v.* J. SLADE AND E. M. PLESS.

ERROR TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 79. Argued January 14, 1910.—Decided January 31, 1910.

Where the state court decides that, under the law of the State the constitutionality whereof is not attacked, the action of defendant in giving replevy bond and answering amounted to a general appearance and waiver of objection to jurisdiction based on a Federal ground, the ruling of general appearance rests on a non-Federal ground sufficient to sustain it and cannot be reviewed by this court.

Where plaintiff in error did not set up in the state court the contention that the contract of interstate shipment should be construed according to the act of Congress regulating interstate shipments instead of by the law of the State where made, but on the contrary, contended that it should be construed by the law of the State of destination and trial of the case, the record presents no Federal question properly set up in the court below that can be considered by this court.

Writ of error to review 3 Ga. App. 400, dismissed.

THE Cincinnati, New Orleans and Texas Pacific Railway Company—hereafter referred to as the railway company—is a corporation organized under the laws of Ohio, and operates lines of railroad in several States other than Georgia.

On May 14, 1907, Pless & Slade, a partnership, asserting a claim against the railway company, resulting from the alleged negligent carriage of a carload of horses and mules, received at a point in Kentucky, for through carriage to Pless & Slade, at Cordele, Georgia, procured an attachment to be issued from the City Court of Cordele, under which a box car belonging to the company was seized. The railway company gave "a replevy bond, or a bond to release the attachment, . . . and on the filing of such bond the attachment became dissolved." The railway company, specially entering its appear-

ance, moved to quash, first, upon the ground that it was a foreign corporation, and had no agent, office or place of business and transacted no business in the State of Georgia, and was not susceptible of being therein sued; and, second, because the box car came into the State under a contract of interstate shipment, and could not be attached in Georgia without imposing a direct burden upon interstate commerce, in violation of the laws of the United States regulating that subject. On July 26, 1907, the plaintiffs demurred to the motion to quash and filed an answer to the same, and on the same day filed their declaration in attachment. On August 3, 1907, the railway company, appearing only for that purpose, filed a formal plea to the jurisdiction of the court. In this plea, with great elaboration, the grounds previously asserted in the motion to quash were reiterated. The plaintiffs demurred to this plea, and also answered the same. Both demurrers, the one to the motion to quash and the other to the plea to the jurisdiction, were heard together. The demurrers were sustained, and exceptions were duly reserved. Thereupon the railway company both demurred to and answered the declaration in attachment. The demurrer challenged the sufficiency of the declaration to show jurisdiction in the court, because it was not averred that the railway company was transacting business or had an office, agent or place of business in the county where the suit was brought or in the State of Georgia; that it was not charged that the acts of negligence for which recovery was sought had been committed in the State of Georgia; and because, on the contrary, the contract relied upon in the declaration was stated therein to have been made in Kentucky. The answer, after reserving the benefit of the demurrer, traversed the declaration on the merits, and as a special defense again set up that the railway company had no line of road in the State or agent therein, and transacted no business in Georgia, and therefore was not subject to be therein sued. Concerning the box car which had been attached it was specially set up, that in order to save breaking bulk and re-

loading at connecting points, the railway company had an agreement with connecting carriers by which its cars, when loaded on its line with freight for points in Georgia, should not be unloaded at the terminus of the company's road, but should be transferred to the connecting carrier for delivery in Georgia, such carrier coming under an obligation to return the cars with all possible dispatch. It was alleged that the car in question was delivered under these circumstances, and was hence not subject to attachment in Georgia.

The demurrer was overruled. The court also sustained a demurrer filed on behalf of the plaintiffs to the special defenses set up by the railway company in its answer, to which we have previously adverted. To these rulings of the court exceptions were noted by the railway company and made part of the record. The case went to trial upon the merits, and at the close of the evidence the court directed a verdict for the plaintiffs. The case was taken to the Court of Appeals of Georgia, where the judgment was affirmed. *Cincinnati, N. O. & T. P. R. Co.* v. *Pless & Slade*, 3 Ga. App. 400. This writ of error to the Court of Appeals was allowed by the chief judge upon the ground that the Court of Appeals was the highest court of the State in which a decision in the suit could be had, and upon the averments made in the petition for the allowance of a writ of error, that grounds of Federal cognizance were presented by the record.

*Mr. D. A. R. Crum*, with whom *Mr. J. Gordon Jones* was on the brief, for plaintiff in error.

*Mr. Joseph T. Hill* for defendant in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

In the trial on the merits it was shown that a shipment of live stock had been made from a point in Kentucky under a

contract with the railway company for delivery at Cordele, Georgia, the contract contemplating the movement of the shipment over the line of the railway company and the transfer by it of the car to connecting carriers for delivery at the point of destination. It was this contract of shipment out of which it was alleged the claim arose which was the basis of the attachment. The railway company offered in evidence the written contract, and then rested its defense. This contract of shipment contained various provisions limiting the common law liability of the railway company. Thereupon the record recites as follows:

"Mr. Hill offers in evidence for plaintiff section 196 of the constitution of the State of Kentucky, as follows:

"'Transportation of freight and passengers by railroad, steamboat, or other carrier, shall be so regulated, by general law, as to prevent unjust discrimination. No common carrier shall be permitted to contract for relief from its common law liability.'

"Mr. Jones [for railway company] objects, that the regulation as provided for in this section should accompany it, and unless it does it is irrelevant and inadmissible; that it is merely a paragraph of the constitution of the State giving the legislature and laws. He further objects to it on the ground that this suit is brought under the Georgia laws, and is not a suit on a Kentucky contract.

"Objection overruled.

"Plaintiff announces closed.

"Mr. Hill moves the court to direct a verdict for plaintiff for the amount sued for.

"Mr. Jones [for railway company] insists that the contract offered is a legal contract, and forms an issue for the jury to pass upon."

Concerning the questions of jurisdiction raised by the pleadings, the Court of Appeals, to which the case was taken, held as follows: 1st. That by the requirements of § 4575 of the Georgia Civil Code, and by the application of the law of the

State as expounded in repeated decisions of the Supreme Court, "the giving of the replevy bond was a general appearance by the defendant, dissolving the attachment and converting it from an action in rem into an action in personam." 2d. That under the law of the State, "the filing of a general demurrer or an answer not under protestation, and without expressly reserving the special appearance, waives the special appearance." Applying these general propositions, it was decided that "the defendant having, by filing a replevy bond, a demurrer, and an answer, submitted itself personally to the jurisdiction of the court, with the right to make only such defenses as it could have made if it had been personally served with process, and the surety on the replevy bond making no complaint against the judgment, it becomes immaterial whether the levy of the attachment was regular or not, or whether the property seized was subject to levy; and these questions are therefore not for decision. *King* v. *Randall*, 95 Georgia, 449. The defendant had the right to replevy irrespective of whether the property was subject or not subject to the levy. *Swift* v. *Tatner*, 89 Georgia, 660, 673." In affirming the judgment on the merits, the contract of shipment out of which the controversy arose was treated as a Kentucky contract. Certain limitations therein were held to be void under the laws of that State, and other provisions which were held not to be repugnant to those laws were decided not to exempt the railway company from liability.

The assignments of error are eleven in number, but when the reiterations which they contain are put out of view it is apparent on their face that, in their broadest aspect, they embrace only two questions of a Federal nature: First, that the trial court did not acquire jurisdiction over the railway company, as the levy upon the box car was a direct burden upon and at all events was repugnant to the legislation of Congress on the subject of interstate commerce; and, second, that a right under the same legislation to the benefit of the laws of the United States in construing the contract of shipment upon

which the cause of action arose was denied by the decision of
the state court. But as we have previously shown, on the face
of the record it is apparent that the Court of Appeals did not
pass upon the question whether the levy of the attachment was
regular or whether the property seized was subject to levy. It
held, construing the statutes of Georgia relating to attach-
ments and the decisions of the highest court of the State that
it was unnecessary to decide those questions, because they had
been waived by the conduct of the railway company in giving
a replevy bond and answering &c., without protestation. It
follows that no .Federal question is presented as to the issue
concerning jurisdiction, since the ruling below was based ex-
clusively upon a non-Federal ground broad enough to sustain
it without considering or referring to the alleged Federal ques-
tion. It is besides to be observed that the plaintiff in error in
argument does not question the correctness of the deductions
drawn by the court below from the prior decisions of the Su-
preme Court of the State of Georgia. Indeed, there is nothing
in the record showing that any question was raised below as
to the repugnancy to the Constitution of the United States of
the statute of Georgia concerning the giving of a bond to re-
lease attached property as construed by the Supreme Court of
Georgia. See, in this connection, the cases of *York* v. *Texas*,
137 U. S. 15, 20; *Kauffman* v. *Wooters*, 138 U. S. 285, and
*Mexican Central R. R. Co.* v. *Pinkney*, 149 U. S. 194, 205.

The second proposition is, that, as the court below con-
strued the contract of shipment upon which the cause of action
depended by the law of Kentucky where it was made instead
of by the laws of the United States regulating interstate com-
merce, thereby a Federal right was denied. But this conten-
tion is at once disposed of by saying that the assertion of Fed-
eral right upon which it rests finds no support in the record,
as it does not appear to have been urged below or called to the
attention of or decided by the appellate court. On the con-
trary, as we have previously shown, the contention made at
the trial by the railway company was not that the contract of

shipment was to be governed by the laws of the United States, but that it should be treated as a Georgia and not as a Kentucky contract.

From these considerations it results that the record presents no Federal question, and the writ of error is therefore dismissed for want of jurisdiction.

*Dismissed.*