NEW YORK EX REL. BRYANT *v.* ZIMMERMAN ET AL.

No. 2. Submitted October 11, 1927.—Decided November 19, 1928.

64

Messrs. *John H. Connaughton, Wm. F. Zumbrunn,* and *Wm. B. Brown* submitted for plaintiff in error.

Messrs. *Albert Ottinger,* Attorney General of New York, *John H. Clogston,* Deputy Attorney General, *Walter F. Hofheins,* and *Guy B. Moore* submitted for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

The relator, Bryant, who was held in custody to answer a charge of violating a statute of New York, brought a proceeding in habeas corpus in a court of that State to obtain his discharge on the ground, as was stated in the petition, that the warrant under which he was arrested and detained was issued without any jurisdiction, in that the statute which he was charged with violating was unconstitutional.

The court sustained the validity of the statute and refused to discharge him, 123 Misc. 859; and that judgment was affirmed by the Appellate Division, 213 App. Div. 414, and by the Court of Appeals, 241 N. Y. 405. He then sued out the present writ of error under § 237(a) of the Judicial Code—his assignment of errors presented in obtaining the writ being to the effect that the Court of Appeals erroneously had held the statute valid against a contention made by him that it was invalid because repugnant to so much of the Fourteenth Amendment to the Constitution of the United States as declares:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The material parts of the state statute (Art. V–A Civil Rights Law; c. 664, Laws 1923, 1110) are as follows:

"Sec. 53. Every existing membership corporation, and every existing unincorporated association having a membership of twenty or more persons, which corporation or association requires an oath as a prerequisite or condition of membership, other than a labor union or a benevolent order mentioned in the benevolent orders law, within thirty days after this article takes effect, and every such corporation or association hereafter organized, within ten days after the adoption thereof, shall file with the secretary of state a sworn copy of its constitution, by-laws, rules, regulations and oath of membership, together with a roster of its membership and a list of its officers for the current year. . . . ."

"Sec. 56. . . . . Any person who becomes a member of any such corporation or association, or remains a member thereof, or attends a meeting thereof, with knowledge that such corporation or association has failed to comply with any provision of this article, shall be guilty of a misdemeanor."

Both parties treat the case as rightly here and as presenting the question whether the state statute is repugnant to the provisions before quoted from the Fourteenth Amendment. But as consent or acquiescence of the parties does not suffice to establish our appellate jurisdiction, and some of our number have doubted the existence of such jurisdiction in this case, we now take up the question.

Section 237a of the Judicial Code (§ 344, Title 28, U. S. Code) provides that this Court may review upon writ of error [1] " a final judgment or decree in any suit " in the

---

[1] The acts of January 31, 1928, c. 14, 45 Stat. 54, and April 26, 1928, c. 440, 45 Stat. 466, substituted an appeal for a writ of error. See Revised Rules, 275 U. S., appendix, pp. 630, 646, 647.

court of last resort of a State " where is drawn in question the validity of a statute of any State on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity." It is under this provision that a review is invoked.

There are various ways in which the validity of a state statute may be drawn in question on the ground that it is repugnant to the Constitution of the United States. No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented.[2]

Of course the decision must have been against the claim of invalidity, but it is not necessary that the ruling shall have been put in direct terms. If the necessary effect of the judgment has been to deny the claim, that is enough.[3]

With these general rules in mind we turn to what is shown in this case. The petition for habeas corpus, while asserting that the state statute was " unconstitutional," contained no mention of any constitutional provision, state or federal. The opinion delivered by the court of

---

[2] *Crowell* v. *Randell*, 10 Pet. 368, 392, 398; *Neilson* v. *Lagow*, 12 How. 98, 109–110; *Furman* v. *Nichol*, 8 Wall. 44, 56; *Green Bay etc., Canal Co.* v. *Patten Paper Co.*, 172 U. S. 58, 67–68; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Starbird*, 243 U. S. 592, 598–599; *Whitney* v. *California*, 274 U. S. 357, 360.

[3] *Crowell* v. *Randell*, *supra*; *Chapman* v. *Goodnow*, 123 U. S. 540, 548; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 236; *Walter A. Wood Co.* v. *Skinner*, 139 U. S. 293, 295; *Roby* v. *Colehour*, 146 U. S. 153, 159–160; *St. Louis, Iron Mountain & Southern Ry Co.* v. *Starbird*, *supra*, p. 601.

first instance was similarly indefinite. Up to that point it is left uncertain whether the claim of invalidity was grounded on some provision of the state constitution, or on some provision of the Constitution of the United States, or on both. If this were all, there plainly would be no basis for a review in this Court. But more appears. The relator took an appeal to the Appellate Division. The appeal was not accompanied by an assignment of errors, but this was not an omission. The local practice does not recognize an assignment of errors as known in other jurisdictions; it merely requires the appellant to set forth in a printed brief "the points to be relied on by him." In the opinion delivered, which for present purposes is deemed part of the record,[4] the Appellate Division stated distinctly that the relator's claim of invalidity was grounded on asserted repugnance to both the due process of law clause of the state constitution and the clauses hereinbefore quoted from the Fourteenth Amendment. After so stating the claim the court considered it at length and denied it. From that decision the relator appealed to the Court of Appeals. Again the appeal was not accompanied by an assignment of errors, and for the same reason as before. See Rule 7, Court of Appeals Rules. The appeal was entertained and the decision of the Appellate Division was affirmed. The Court of Appeals in its opinion does not mention the constitution of the State or the Fourteenth Amendment, but does state that the relator was asserting the "unconstitutionality" of the statute on the ground that it deprived him of his liberty without due process of law and denied him the equal protection of the laws, etc. Nothing in the opinion is at all indicative of an aban-

[4] *Murdock* v. *Memphis*, 20 Wall. 590, 633; *Philadelphia Fire Association* v. *New York*, 119 U. S. 110, 116; *San Jose Land & Water Co.* v. *San Jose Ranch Co.*, 189 U. S. 177, 179–180; *Neilsen* v. *Lagow*, 12 How. 98, 109–110.

donment by the relator of his reliance on the Fourteenth Amendment which was so distinctly stated in the opinion of the Appellate Division. On the contrary, the court's discussion of the case and its citation of authorities proceed as if it were considering the identical claim of invalidity that was presented in the Appellate Division and there denied. Among the citations are several decisions of this Court dealing only with the clauses before quoted from the Fourteenth Amendment. Indeed, the opinion shows that in upholding the statute against the contention that it denies the equal protection of the laws the Court of Appeals practically rested its decision " on the authority " of *Radice* v. *New York,* 264 U. S. 292, 296, 297, where another statute of New York assailed as in conflict with the equal protection clause of that Amendment was sustained.

From this showing in the record, coupled with the absence from the state constitution of an equal protection of the laws clause, we think it apparent that the claim of invalidity by reason of the statute's repugnance to the Fourteenth Amendment was presented to the Court of Appeals and that by its decision the statute was upheld against that claim.

Upon looking at that decision as published in, the official reports (241 N. Y. 405) we find it stated by the reporter in his accompanying synopsis of the briefs that the brief on behalf of the relator embodied the specific claim that the statute was invalid because in conflict with the equal protection and other provisions of the Fourteenth Amendment. But as we otherwise reach the conclusion that the claim was adequately made, there is no need to notice what is said in the reporter's synopsis beyond observing that it probably points to the reason why both parties, and the Chief Judge who allowed the writ of error, treated the case as one in which the question of the validity of the statute under the Constitution of the United States had been properly presented.

Our jurisdiction to review the decision is questioned also because of the nature of the case, it being a proceeding in habeas corpus brought to obtain the discharge of one who is held in custody to answer a charge of violating a state statute alleged to be invalid by reason of its conflict with the Constitution of the United States. But we think our jurisdiction is in this regard so well established by prior decisions and long-continued practice that it is not debatable.

In the early case of *Holmes* v. *Jennison,* 14 Pet. 540, 563, 568, 597, this Court held after much consideration that a proceeding in habeas corpus in a state court to obtain the release of one held in custody upon a criminal charge, where the detention is alleged to be in violation of the Constitution of the United States, is a " suit " within the meaning of the jurisdictional statute, and that an order of the state court of last resort refusing to discharge him is a final judgment in that suit and subject to review by this Court. That holding has been respected and given effect in an unbroken line of later decisions, all of which in their material facts and surroundings were like the case now before us.[5] It also has been followed in other cases related in principle.[6]

The proceeding before us was not brought in antagonism to the established practice in the State, but in entire

[5] *Smith* v. *Alabama,* 124 U. S. 465; *Osborne* v. *Florida,* 164 U. S. 650; *Lieberman* v. *Van De Carr,* 199 U. S. 552; *Silz* v. *Hesterberg,* 211 U. S. 31; *Flaherty* v. *Hanson,* 215 U. S. 515; *Collins* v. *Texas,* 223 U. S. 288; *Sligh* v. *Kirkwood,* 237 U. S. 52.

[6] *Abelman* v. *Booth,* 21 How. 506; In re *Neagle,* 135 U. S. 1; *Ward* v. *Racehorse,* 163 U. S. 504; *Urquhart* v. *Brown,* 205 U. S. 179, 181–182. And see *Weston* v. *Charleston,* 2 Pet. 449, 464; *Plessy* v. *Ferguson,* 163 U. S. 537; *Mt. Vernon Cotton Co.* v. *Alabama Power Co.,* 240 U. S. 30; *Detroit & Mackinac Ry. Co.* v. *Michigan R. R. Comm.,* 240 U. S. 564; *St. Louis, B. & M. Ry. Co.* v. *Taylor,* 266 U. S. 200.

keeping with that practice as confirmed by local statutes. Civil Practice Act, Art. 77, §§ 1230–1235, 1251. This was recognized in the decisions given by the courts of the State. And the proceeding was independent, adversary, and both adapted and directed to the enforcement of a most important personal right. It is quite unlike the fragmentary or branch proceeding considered in *Grays Harbor Logging Co.* v. *Coats-Fordney Logging Co.*, 243 U. S. 251, 256; the judgment in which was held to be interlocutory only, and not final in the sense of the jurisdictional statute.

We are accordingly of opinion that the case and the judgment therein are of such a nature that we have jurisdiction to review the latter.

The offense charged against the relator is that he attended meetings and remained a member of the Buffalo Provisional Klan of the Knights of the Ku Klux Klan, an unincorporated association—but neither a labor union nor a benevolent order mentioned in the benevolent orders law—having a membership of more than twenty persons and requiring an oath as a prerequisite or condition of membership, he then having knowledge that such association had wholly failed to comply with the requirement in § 53.

There are various privileges and immunities which under our dual system of government belong to citizens of the United States solely by reason of such citizenship. It is against their abridgement by state laws that the privilege and immunity clause in the Fourteenth Amendment is directed. But no such privilege or immunity is in question here. If to be and remain a member of a secret, oath-bound association within a State be a privilege arising out of citizenship at all, it is an incident of state rather than United States citizenship; and such protection as is thrown about it by the Constitution is in no

wise affected by its possessor being a citizen of the United States. Thus there is no basis here for invoking the privilege and immunity clause.[7]

The relator's contention under the due process clause is that the statute deprives him of liberty in that it prevents him from exercising his right of membership in the association. But his liberty in this regard, like most other personal rights, must yield to the rightful exertion of the police power. There can be no doubt that under that power the State may prescribe and apply to associations having an oath-bound membership any reasonable regulation calculated to confine their purposes and activities within limits which are consistent with the rights of others and the public welfare. The requirement in § 53 that each association shall file with the secretary of state a sworn copy of its constitution, oath of membership, etc., with a list of members and officers is such a regulation. It proceeds on the two-fold theory that the State within whose territory and under whose protection the association exists is entitled to be informed of its nature and purpose, of whom it is composed and by whom its activities are conducted, and that requiring this information to be supplied for the public files will operate as an effective or substantial deterrent from the violations of public and private right to which the association might be tempted if such a disclosure were not required. The requirement is not arbitrary or oppressive, but reasonable and likely to be of real effect. Of course, power to require the disclosure includes authority to prevent individual members of an association which has failed to comply from attending meetings or retaining membership with knowl-

---

[7] *Slaughter House Cases,* 16 Wall. 36, 77, *et seq.; Bradwell* v. *Illinois,* 16 Wall. 130, 139; *Bartemeyer* v. *Iowa,* 18 Wall. 129, 133; *Minor* v. *Happersett,* 21 Wall. 162, 171; *United States* v. *Cruikshank,* 92 U. S. 542, 551–552; *Giozza* v. *Tiernan,* 148 U. S. 657, 661; *In re Lockwood,* 154 U. S. 116, 117.

edge of its default. We conclude that the due process · clause is not violated.

The main contention made under the equal protection clause is that the statute discriminates against the Knights of the Ku Klux Klan and other associations in that it excepts from its requirements several associations having oath-bound membership, such as labor unions, the Masonic fraternity, the Independent Order of Odd Fellows, the Grand Army of the Republic and the Knights of Columbus—all named in another statute which provides for their incorporation and requires the names of their officers as elected from time to time to be reported to the secretary of state.

The principle to be applied in determining whether a particular ·discrimination or classification offends against the equal protection clause is shown in the following excerpts from some of our decisions:

*Patsone* v. *Pennsylvania,* 232 U. S. 138, 144—" The discrimination undoubtedly presents a more difficult question. But we start with the general consideration that a State may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 80, 81. The State ' may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 160."

*Miller* v. *Wilson*, 236 U. S. 373, 383—"The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the legislature may be guided by experience. *Patsone* v. *Pennsylvania*, 232 U. S. 138, 144. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest."

*Radice* v. *New York*, 264 U. S. 292, 296—"Such classification must not be 'purely arbitrary, oppressive or capricious.' *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89, 92. But the mere production of inequality is not enough. Every selection of persons for regulation so results, in some degree. The inequality produced, in order to encounter the challenge of the Constitution, must be 'actually and palpably unreasonable and arbitrary.' *Arkansas Natural Gas Co.* v. *Railroad Commission*, 261 U. S. 379, 384, and cases cited. Thus classifications have been sustained which are based upon differences between fire insurance and other kinds of insurance, *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557, 562; between railroads and other corporations, *Tullis* v. *Lake Erie & Western R. R. Co.*, 175 U. S. 348, 351; between barber shop employment and other kinds of labor, *Petit* v. *Minnesota*, 177 U. S. 164, 168; between 'immigrant agents' engaged in hiring laborers to be employed beyond the limits of a State and persons engaged in the business of hiring for labor within the State, *Williams* v. *Fears*, 179 U. S. 270, 275; between sugar refiners who produce the sugar and those who purchase it, *American Sugar Refining Co.* v. *Louisiana, supra.*"

*Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389, 400—"The equal protection clause does not detract from

the right of the State justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.' *Power Co.* v. *Saunders,* 274 U. S. 490, 493."

The courts below recognized the principle shown in the cases just cited and reached the conclusion that the classification was justified by a difference between the two classes of associations shown by experience, and that the difference consisted (a) in a manifest tendency on the part of one class to make the secrecy surrounding its purposes and membership a cloak for acts and conduct inimical to personal rights and public welfare, and (b) in the absence of such a tendency on the part of the other class. In pointing out this difference one of the courts said of the Ku Klux Klan, the principal association in the included class: " It is a matter of common knowledge that this organization functions largely at night, its members disguised by hoods and gowns and doing things calculated to strike terror into the minds of the people "; and later said of the other class: " These organizations and their purposes are well known, many of them having been in existence for many years. Many of them are oath-bound and secret. But we hear no complaints against them regarding violation of the peace or interfering with the rights of others." Another of the courts said: " It is a matter of common knowledge that the association or organization of which the relator is concededly a member exercises activities tending to the prejudice and intimidation of sundry classes of our citizens. But the legislation is not confined to this society "; and later said of the other class, "Labor unions have a recognized lawful purpose. The benevolent orders mentioned in the Benevolent Orders Law have already received legislative scrutiny and been

granted special privileges so that the legislature may well consider them beneficial rather than harmful agencies." The third court after recognizing " the potentialities of evil in secret societies " and observing that " the danger of certain organizations has been judicially demonstrated "— meaning in that State,—said: " Benevolent orders, labor unions and college fraternities have existed for many years, and, while not immune from hostile criticism, have on the whole justified their existence."

We assume that the legislature had before it such information as was readily available, including the published report of a hearing before a committee of the House of Representatives of the 57th Congress relating to the formation, purposes and activities of the Ku Klux Klan.[8] If so, it was advised—putting aside controverted evidence—that the order was a revival of the Ku Klux Klan of an earlier time with additional features borrowed from the Know Nothing and the A. P. A. orders of other periods; that its membership was limited to native born, gentile, protestant whites; that in part of its constitution and printed creed it proclaimed the widest freedom for all and full adherence to the Constitution of the United States, in another exacted of its members an oath to shield and preserve "white supremacy," and in still another declared any person actively opposing its principles to be " a dangerous ingredient in the body politic of our country and an enemy to the weal of our national commonwealth "; that it was conducting a crusade against Catholics, Jews and Negroes and stimulating hurtful religious and race prejudices; that it was striving for political power and assuming a sort of guardianship over the administration of local, state and national af-

[8] House Committee Hearings, 1921, Vol. 302. See also, The Challenge of the Klan, by Stanley Frost; The Ku Klux Klan, by John M. Mecklin.

fairs; and that at times it was taking into its own hands the punishment of what some of its members conceived to be crimes.

We think it plain that the action of the courts below in holding that there was a real and substantial basis for the distinction made between the two sets of associations or orders was right and should not be disturbed.

Criticism is made of the classification on the further ground that the regulation is confined to associations having a membership of twenty or more persons. Classification based on numbers is not necessarily unreasonable. There are many instances in which it has been sustained. We think it not unreasonable in this instance. With good reason the legislature may have thought that an association of less than twenty persons would have only a negligible influence and be without the capacity for harm that would make regulation needful.

We conclude that all the objections urged against the statute are untenable as held by the courts below.

*Judgment affirmed.*

Separate opinion of MR. JUSTICE MCREYNOLDS.

For two reasons, I think we have no jurisdiction of this writ of error and that it should be dismissed.

The cause was finally determined by the Court of Appeals of New York, January 12, 1926. The record fails to disclose that any federal question was presented to or considered by that court. Moreover, the real controversy between the parties involves no substantial federal question.

The petition for habeas corpus—presented to the Supreme Court—affirmed that plaintiff in error was confined in the Buffalo jail under pretense that he had " violated Chapter 664 of the Laws of 1923, which law is commonly known as the Walker Law, and which law is sec-

tions 53, 54, 55 and 56 of Article V-A of the Civil Rights Law." These sections are printed below.* It then alleged " that said imprisonment and restraint is illegal in this, to-wit: That the Magistrate was without jurisdiction to issue the warrant, or cause his arrest, inasmuch as chapter 664 of the Laws of 1923, is unconstitutional and void 'and of no force or effect." And upon that ground alone it sought the petitioner's release. The petition did not refer to the Federal Constitution or any statute of the United States.

The warrant for plaintiff in error's arrest was based upon an information which, in the language of the Court of Appeals, charged " that he attended a meeting of and remained a member of Buffalo Provisional Klan of the Knights of the Ku Klux Klan with knowledge that said

---

* " Section 53. Copies of documents and statements to be filed. Every existing membership corporation, and every existing unincorporated association having a membership of twenty or more persons, which corporation or association requires an oath as a prerequisite or condition of membership, other than a labor union or a benevolent order mentioned in the benevolent orders law, within thirty days after this article takes effect, and every such corporation or association hereafter organized, within ten days after the adoption thereof, shall file with the secretary of state a sworn copy of its constitution, by-laws, rules, regulations and oath of membership together with a roster of its membership and a list of its officers for the current year. Every such corporation and association shall, in case its constitution, by-laws, rules, regulations or oath of membership or any part thereof, be revised, changed or amended, within ten days after such revision or amendment file with the secretary of state a sworn copy of such revised, changed or amended constitution, by-law, rule, regulation or oath of membership. Every such corporation or association shall within thirty days after a change has been made in its officers file with the secretary of state a sworn statement showing such change. Every such corporation or association shall at intervals of six months file with the secretary of state a sworn statement showing the names and addresses of such additional members as have been received in such corporation or association during such interval.

" Section 54. Resolutions Concerning Political Matters.—Every such corporation or association shall, within ten days after the adoption

association, which has more than twenty members, requires an oath as a prerequisite or condition of membership, and is not a labor union or a benevolent order mentioned in the Benevolent Orders Law (Cons. Laws, ch. 3) had not complied with the provisions of the statute by filing with the Secretary of State a sworn copy of its constitution, by-laws, rules, regulations and oath of membership, together with a roster of its membership and a list of its officers for the current year." The writ of habeas corpus followed the usual form; the record contains no return thereto.

Upon an affidavit that the constitutionality of Chapter 664, Act of 1923, had been challenged, the Supreme Court permitted the Attorney-General to intervene.

---

thereof, file in the office of the secretary of state every resolution, or the minutes of any action of such corporation or association, providing for concerted action of its members or of a part thereof to promote or defeat legislation, federal, state or municipal, or to support or to defeat any candidate for political office.

"Section 55. Anonymous Communications Prohibited.—It shall be unlawful for any such corporation or association to send, deliver, mail or transmit to any person in this state who is not a member of such corporation or association any anonymous letter, document, leaflet or other written or printed matter, and all such letters, documents, leaflets or other written or printed matter, intended for a person not a member of such corporation or association, shall bear on the same the name of such corporation or association and the names of the officers thereof together with the addresses of the latter.

"Section 56. Offenses; Penalties.—Any corporation or association violating any provision of this article shall be guilty of a misdemeanor punishable by a fine of not less than one thousand dollars nor more than ten thousand dollars. Any officer of such corporation or association and every member of the board of directors, trustees or other similar body, who violates any provision of this article or permits or acquiesces in the violation of any provision of this article by any such corporation shall be guilty of a misdemeanor. Any person who becomes a member of any such corporation or association, or remains a member thereof, or attends a meeting thereof, with knowledge that such corporation or association has failed to comply with any provision of this article, shall be guilty of a misdemeanor."

The cause was heard by the Supreme Court upon the petition, information, warrant, writ of habeas corpus, and argument of counsel. No other evidence was introduced. There is nothing to show that the association to which plaintiff in error belonged had any connection whatever with the Ku Klux Klan of the last century; nothing to show its purpose, or the nature of the oath taken by members.

The Supreme Court discharged the writ, but neither its judgment nor the accompanying opinion mentions the Federal Constitution or any statute of the United States. Without supporting evidence, that Court said: "It may be assumed that the legislature informed itself of conditions bearing upon the proposed legislation. These conditions probably are not such as would enable the Court to take judicial notice of them, but the legislature could well have learned of the acts of the Klan. It is a matter of common knowledge that this organization functions largely at night, its members disguised by hoods and gowns and doing things calculated to strike terror into the minds of the people. It is claimed that they are organized against certain of the citizens by reason of race or religion."

Thereupon the cause was appealed to the Appellate Division without any assignment of errors and that Court affirmed the order discharging the writ. The opinion there contains the following language—

"The facts are not in dispute. Relator sued out a writ of habeas corpus upon the theory that the statute in question is unconstitutional and that is the only question to be determined. . . .

"Relator complains that the exemption in said statute of labor unions and the benevolent orders mentioned in the Benevolent Orders Law is an unlawful classification in violation of Sec. 6 of Article 1, of the Constitution of

the State of New York, which provides among other things that no person shall be deprived of life, liberty or property without due process of law, and of Sec. 1 of the 14th Amendment of the Federal Constitution, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, and that no state shall deprive any citizen of life, liberty, or property, without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the law. . . .

" It is a matter of common knowledge that the association or organization of which relator is concededly a member exercises activities tending to the prejudice and intimidation of sundry classes of our citizens. . . '."

The foregoing is the only direct reference to Federal Constitution or laws disclosed by the record.

Finally, the cause went by appeal and without assignment of error to the Court of Appeals of New York. That court affirmed the order of the Appellate Division and delivered a supporting opinion which does not mention the Federal Constitution, or any statute of the United States. Certainly it cannot be said that the record affirmatively discloses that any federal question was raised or considered in the Court of Appeals.

In *Crowell* v. *Randell* (1836), 10 Peters 368, 392, upon motion to dismiss the writ of error to the Supreme Court of Delaware for want of jurisdiction, Mr. Justice Story, in behalf of the Court, said—

" In the interpretation of this section [25] of the act of 1789, it has been uniformly held, that to give this court appellate jurisdiction two things should have occurred and be apparent in the record: first, that some one of the questions stated in the section did arise in the court below; and secondly, that a decision was actually made thereon by the same court, in the manner required by

the section. If both of these do not appear on the record, the appellate jurisdiction fails. It is not sufficient to show that such a question might have occurred, or such a decision might have been made in the court below. It must be demonstrable that they did exist, and were made. The principal, perhaps the only important, difficulty which has ever been felt by the court, has been in ascertaining in particular cases whether these matters (the question and decision) were apparent on the record. And here the doctrine of the court has been, that it is not indispensable that it should appear on the record, *in totidem verbis*, or by direct and positive statement, that the question was made and the decision given by the court below on the very point; but that it is sufficient, if it is clear, from the facts stated, by just and necessary inference, that the question was made, and that the court below must, in order to have arrived at the judgment pronounced by it, have come to the very decision of that question as indispensable to that judgment."

The language of the Act of February 25, 1925, and of the Judiciary Act of 1789, presently important, is substantially the same.

In *Michigan Sugar Company* v. *Michigan,* 185 U. S. 112, 113, by Chief Justice Fuller, this Court said—

" The Supreme Court of the State did not refer to the Federal Constitution or consider and decide any Federal question. For aught that appears, the court proceeded in its determination of the cause without any thought that it was disposing of such a question.

" The rule is firmly established, and has been frequently reiterated, that the jurisdiction of this court to re-examine the final judgment of a state court, under the third division of section 709, cannot arise from mere inference, but only from averments so distinct and positive as to place

it beyond question that the party bringing the case here from such court intended to assert a Federal right. The statutory requirement is not met unless the party unmistakably declares that he invokes for the protection of his rights, the Constitution, or some treaty, statute, commission or authority, of the United States. Applying this rule to the case before us, the writ of error cannot be maintained."

In *Whitney* v. *California*, 274 U. S. 357, 360, we held—

" It has long been settled that this Court acquires no jurisdiction to review the judgment of a state court of last resort on a writ of error, unless it affirmatively appears on the face of the record that a federal question constituting an appropriate ground for such review was presented in and expressly or necessarily decided by such state court."

*Crowell* v. *Randell,* 10 Pet. 368, 392; *Railroad Co.* v. *Rock,* 4 Wall. 177, 180; *California Powder Works* v. *Davis,* 151 U. S. 389, 393; *Cincinnati, etc. Railway* v. *Slade,* 216 U. S. 78, 83; *Hiawassee Power Co.* v. *Carolina-Tenn. Co.,* 252 U. S. 341, 343; *New York* v. *Kleinert,* 268 U. S. 646, 650, were cited. See also *Mellon* v. *O'Neil,* 275 U. S. 212, 214; *Dewey* v. *Des Moines,* 173 U. S. 193, 199; *Keokuk & Hamilton Bridge Co.* v. *Illinois,* 175, U. S. 626, 634.

It is not enough that the opinion of the Appellate Division referred to the Constitution of the United States. To give us jurisdiction the record must show affirmatively that the federal question was before the Court of Appeals. Mere inference will not do. This rule has been rigidly enforced for a hundred years.

The function of a writ of habeas corpus is to test the validity of challenged imprisonment—not the guilt or innocence of the prisoner. And over and over again this Court has asserted that it will not permit habeas corpus to perform the office of a writ of error.

84

It must now be accepted as settled doctrine in this Court that one is not deprived of any federal right merely by being put on trial for violating a state statute which conflicts with the Federal Constitution. Nor is one deprived of his federal right solely because he may be imprisoned after conviction of violating a state statute admittedly in conflict with the Federal Constitution.

It follows that, when the petition for habeas corpus alleged that plaintiff in error was imprisoned under a charge of violating a state statute said to be unconstitutional and void, no real federal question was raised. The legality of his imprisonment did not depend at all upon the validity of the act which it was said he had violated. His right was to an orderly hearing upon the charge, with the privilege of ultimate review here. And as the habeas corpus proceeding never involved any substantial question arising under the Constitution or laws of the United States, we have no jurisdiction to review it.

Undoubtedly, cases like this have been entertained here in the past. But, since it has become settled law that mere imprisonment and trial under a charge based upon an unconstitutional state statute does not deprive one of his liberty without due process of law, we should deny further jurisdiction. There is no longer any controverted federal question essential to decision of the cause.

This view is aided by consideration of the serious and manifest evil which will follow a different course. Certainly, we should not undertake to determine the validity of a state statute in advance of trial upon the merits simply because some prisoner sees fit to sue out a writ of habeas corpus upon the alleged ground of conflict between the statute and Federal Constitution.