**232**

Phillip MARSHALL and Martha
Marshall, Plaintiffs,

v.

Carl Ray BRAMER, Billy Wayne Em-
mones, John Doe, and Unknown
Defendants K–1 thru K–50, Defendants.

Civ. A. No. 85–0836–L(J).

United States District Court,
W. Dist. Kentucky,
Louisville Division.

Oct. 2, 1985.

Supplemental Memorandum Opinion
May 28, 1986.

Morris S. Dees and Phillip J. Shepherd,
for plaintiffs.

Mark Miller, for Alex Young.

Samuel H. Fritschner, American Civil Lib-
erties Union, amicus curiae.

MEMORANDUM AND ORDER

JOHNSTONE, Chief Judge.

Plaintiffs Phillip and Martha Marshall
bring this action under 42 U.S.C. §§ 1985(3)
and 1986 seeking injunctive relief and dam-
ages for defendants' alleged conspiracy to
burn their home and violate their civil
rights. Three of the defendants are named
in the complaint; the others are unknown.
All are alleged members of the Ku Klux
Klan or one of the Klan's associated orga-
nizations. Plaintiffs are a black couple
who lived in the all white Louisville commu-
nity of Sylvania when their home was de-
stroyed by arsonists. They claim that de-
fendants burned the home in an effort to
drive them from the neighborhood. Juris-

diction over this action exists under 28 U.S.C. §§ 1331 and 1343.

Alex Young, a Sylvania policeman who is not a party to this action, was served with a Subpoena Duces Tecum on behalf of plaintiffs, which required Young to appear on September 30, 1985, with:

1. All records, membership lists, cancelled checks, post office records, printed literature, rubber address stamps, and other documents in his possession or under his control relating to the Confederate Officers Patriotic Society, the Ku Klux Klan, and any racist organization of which he is or has been affiliated with during the past five (5) years.

2. All records in his control or possession pertaining to a Post Office Box 91116, Fern Creek, Kentucky, including any cancelled checks or receipts for rent payment for said Post Office Box.

Now before the court is Young's motion to quash the Subpoena Duces Tecum or in the alternative a motion for protective order. In support of his motion, Young claims that the production of Klan membership lists would inhibit the first amendment rights of association of Young and other members whose names would be disclosed. Moreover, the subpoena seeks documents and information not relevant to the action.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope of discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Rule 26(b)(1) *Fed. Rules Civ.Pro.* The material sought need not be admissible at trial. It need only appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The material sought by plaintiffs from Young is relevant to the action. Young is a confessed member or past member of the Klan and other racist organizations. Plaintiffs complaint states that the named defendants and other unidentified members of the Klan and or the Confederate Officers Patriotic Society (COPS) conspired to violate plaintiffs' civil rights. The requested membership lists and other documents could lead plaintiffs to the identity of the unknown co-conspirators. Klan and COPS literature could be relevant to a determination of whether the intent of the conspirators in their alleged arson was to violate plaintiffs' civil rights. Thus, the subpoena seeks "matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case." Such matter is relevant and within the scope of discovery as defined in Rule 26(b)(1). *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

However, the court's inquiry does not end with a determination of relevance. Rule 26(b)(1) provides that relevant information is admissible *if* it is not privileged, and here Young claims that plaintiffs seek material which is protected by the right to freedom of association.

The Supreme Court has firmly established that "rights of association are within the ambit of the constitutional protections afforded by the First and Fourteenth Amendments." *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 543, 83 S.Ct. 889, 892, 9 L.Ed.2d 929 (1963); *see also Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. State of Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Freedom of association may be restrained if groups engaged in political advocacy are compelled to disclose the identity of their members. Thus, the guarantee of free association encompasses the right to privacy in one's associations. *Gibson,* 372 U.S. at 543, 83 S.Ct. at 892.

Most cases that address freedom of association concern a state or state agency which has tried to compel an organization to submit a list of its members. *See e.g. NAACP v. State of Alabama,* 357 U.S. at 449, 78 S.Ct. at 1163; *People of State of New York ex rel. Bryant v. Zimmerman,* 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1928). In those cases the Court recognized that the state may have an interest in

seeking disclosure of organizations' members. *Id.* The proper test to be applied to reconcile the competing interests of the government and the organization is whether the state can "convincingly show a substantial relation between the information sought and a subject of compelling state interest." *Gibson,* 372 U.S. at 546, 83 S.Ct. 893–94.

Although the instant action concerns subpoena of membership lists in discovery, the test applied to determine whether the lists must be disclosed is essentially the same as that articulated in the above Supreme Court cases. There must be a showing that the identities of the organization's members are reasonably relevant to the party's investigation of illegal activity and that the interest in disclosure is sufficiently compelling to outweigh the constitutionally protected interests of the members of the organization. *Savola v. Webster,* 644 F.2d 743 (8th Cir.1981); *Australia/Eastern U.S.A. v. United States,* 537 F.Supp. 807, 810 (D.D.C.1982). "[F]orced disclosure of first amendment activities creates a chilling effect which must be balanced against the interests in obtaining the information." *Australia/Eastern U.S.A.,* 537 F.Supp. at 810. Accordingly, it is the duty of this court to measure the plaintiffs' need for the information sought against the first amendment rights of Young and other Klan members. *See Hastings v. North East Independent School District,* 615 F.2d 628 (5th Cir.1980).

The plaintiffs have an exceedingly strong interest in obtaining the membership lists of the Klan and other racist organizations. Their claims arise out of the burning of their home allegedly by members of the Klan and COPS. Plaintiffs know the identity of only three of the defendants. They are faced with extreme difficulty in determining the identity of other co-conspirators because Klan members are required to take oaths of secrecy as to membership and activities. *Affidavit of D.K. Welsh; Constitution of the Invisible Empire,* Knights of the Ku Klux Klan, exhibit "B" to plaintiff's memorandum.

Moreover, the plaintiffs have submitted strong support for their contention that the Klan and COPS were responsible for the arson. Klan emblems were placed on poles and trees outside the burned home. The Sylvania Klan leader, Jim Kennedy, established a legal defense fund for the three men arrested for and charged with the arson. Less than two months after the fire, the Klan held a rally two blocks from the site of the fire and promised the crowd that no black would live in the Sylvania community. On the day of that rally, the remains of the Marshall home were again burned.

Finally, plaintiffs have tried alternative methods to discover the names of the organizations' members. Their investigator questioned residents of Sylvania, officials at the police department, and public officials, but he has had no success. *Affidavit of D.K. Welsh.* Thus, plaintiffs claim that the only reasonable method to obtain the members of the Klan and COPS and possibly the identity of the unknown co-conspirators is to obtain the material allegedly held by Young.

The Supreme Court has consistently recognized that there is a stronger interest in disclosing the members of an organization engaged in illegal activities, than in disclosing the members of an organization engaged in peaceful or legal activities. In *People of State of New York ex rel. Bryant v. Zimmerman,* the Court held that a New York law requiring disclosure of the members of the Ku Klux Klan was constitutional. 278 U.S. at 63, 49 S.Ct. at 61. When the Court later ruled that a similar law was unconstitutional as applied to the NAACP, it specifically reaffirmed the decision in *Zimmerman* stating, "[t]he decision was based on the particular character of the Klan's activities, involving acts of unlawful intimidation and violence ... of which the Court itself took judicial notice." *NAACP v. State of Alabama,* 357 U.S. 449, 462, 465, 78 S.Ct. 1163, 1171, 1173 (1958). Plaintiffs filed the affidavit of William Stanton, Director of the Klanwatch Project in Montgomery, Alabama. Stanton out-

lined several cases in which members of the Klan and its factions were found guilty of violent crimes, all involving black or foreign-born victims. In addition, plaintiffs cite two other racially-motivated arsons which occurred in the Sylvania area prior to the Marshall fire. No arrests were made in either instance. One fire was not investigated by the police department.

■ In summary, the plaintiffs have a strong interest in the material they seek from Young. It is virtually the only method of obtaining the identities of the unknown co-conspirators, and the actions they are investigating were illegal and allegedly committed by members of an organization noted for its tactics of violence and intimidation. In light of these considerations, the court finds that the need for disclosure outweighes the rights to freedom of association of Young and the alleged Klan members. This finding is additionally supported by the fact that plaintiffs bring their action under 42 U.S.C. § 1985 which was enacted after the Civil War to combat the activities of the Ku Klux Klan.

Accordingly, the court shall deny Young's motion to quash or for a protective order.

IT IS ORDERED for the reasons set forth in this opinion that the motion of Alex Young to quash Subpoena Duces Tecum or, in the alternative, motion for protective order is DENIED.

## SUPPLEMENTAL MEMORANDUM OPINION

This matter is before the court on the plaintiffs' motion to hold Alex Young in civil contempt for his willful refusal to comply with a Subpoena Duces Tecum. Plaintiffs Phillip and Martha Marshall brought this action under the Ku Klux Klan Act, 42 U.S.C. §§ 1985(3) & 1986, after arsonists destroyed their home in the all white Louisville community of Sylvania. Alex Young, a former Sylvania policeman and the subject of plaintiffs' contempt motion, is not a party to this action.

### Background

In the course of investigating possible Ku Klux Klan involvement in the burning of their home, the plaintiffs served Alex Young with a Subpoena Duces Tecum requiring him to produce the names and addresses of members of the Confederate Officers' Patriotic Squad, a Klan group headed by Young. Rather than produce the membership list, Young moved the court to quash the subpoena.

After careful consideration of the competing interests implicated by the plaintiffs' discovery request, the court denied Young's motion to quash in a Memorandum and Order dated October 2, 1985 (entered October 4, 1985). Despite this ruling, Young continued to withhold the membership list and the plaintiffs filed their motion for contempt.

In conjunction with the contempt hearing, the plaintiffs moved the court for an order compelling Young to surrender the list. After argument by counsel, the court granted plaintiffs' motion and ordered Young to produce the list. When Young refused, the court heard counsel on the motion for contempt.

### Additional Findings of Fact

The court hereby supplements its October 2, 1985, Memorandum and Order with additional findings of fact.

1. The court takes judicial notice of findings and rulings contained in the following cases in which the Ku Klux Klan is identified as a violence-prone group with a history of harassing, intimidating, and injuring blacks and members of other minority groups: *McMullen v. Carson,* 754 F.2d 936, 938 (11th Cir.1985) ("There is uncontradicted evidence that violent racism has become the Klan's hallmark and has not subsided to any appreciable extent since the Klan's founding shortly after the Civil War."); *Shelton v. United States,* 404 F.2d 1292 (D.C.Cir.1968); *Vietnamese Fishermen's Asso. v. The Knights of the Ku Klux Klan,* 543 F.Supp. 198 (S.D.Tex.1982); *United States v. Original Knights of the Ku Klux Klan,* 250 F.Supp. 330 (E.D.La.

1965); *United States v. U.S. Klan, Knights of the Ku Klux Klan,* 194 F.Supp. 897 (M.D.Ala.1961).

2. The court takes judicial notice of the following criminal cases in which individual Klan members were found or pleaded guilty to numerous crimes, many involving racial violence:

a. *U.S. v. Ricky Lynn Creekmore, Charles Jethro Puckett,* No. CR80A00012NW (N.D.Ala.). Creekmore and Puckett, both members of the Invisible Empire, Alabama Realm, pleaded guilty on February 19, 1980, to attacking two black ministers in Muscle Shoals, Alabama on October 29, 1979.

b. *United States v. Jack Ray Mize,* No. CR84C103NE (N.D.Ala.). Mize, a titan or regional leader of the Invisible Empire, Alabama Realm, pleaded guilty on May 17, 1984, to conspiring to attack a group of black demonstrators in Decatur, Alabama on May 26, 1979.

c. *United States v. Clarence Eugene Brown,* No. CR79HOO296NE (N.D. Ala.). Invisible Empire Klansman Brown of the Alabama Realm was convicted on January 15, 1981, of threatening a Vietnamese co-worker on October 1–2, 1980, in an attempt to force him to quit his job.

d. *United States v. Mailon Paul Wood, et al.,* No. CR84232A (N.D.Ga.). Four Invisible Empire Klansmen, Georgia Realm, were convicted in November 1984 of attacking and attempting to intimidate an interracial couple and a white who associated with blacks in separate attacks on November 23, 1982, and February 9, 1983. A fifth Klansman pleaded guilty to the charges.

e. *State of Alabama v. Lloyd Letson,* Nos. CC790368 and CC790369 (Morgan Co. Cir.Ct.). Letson, a member of the Alabama Realm of the Invisible Empire, pleaded guilty to assaulting an officer and resisting arrest during a KKK attack on a group of black demonstrators in Decatur on May 26, 1979.

f. *State of Georgia v. Danny Foskey and Herschel Hall,* No. 233 (Johnson Co. Super.Ct.). Invisible Empire member Foskey, of the Georgia Realm, was convicted of shooting into the home of a black family following a KKK rally at Wrightsville, Georgia in April 1980.

g. *State of Mississippi v. Horace Hubbard, Billy Hubbard,* No. 2926 (Tishomingo Co.Cir.Ct.). The Hubbards, members of the Mississippi Realm of the Invisible Empire, were convicted on January 19, 1981, of murdering an Alabama bail bondsman who sought their appearance in Montgomery, Alabama for trial on charges of carrying a concealed weapon during an illegal KKK parade in Montgomery on August 12, 1979.

h. *United States v. George Malvaney,* No. CR81212F (E.D.La.). Malvaney, of the Mississippi Realm of the Invisible Empire, pleaded guilty to violating the U.S. Neutrality Act for plotting to overthrow the friendly, predominantly black country of Dominica along with nine other Klansmen and Nazis in May 1981.

i. *United States v. Gladys Girgenti,* No. 38130124 (M.D.Tenn.). Girgenti, one-time director of the Invisible Empire's Klan Youth Corps in Tennessee, was convicted in 1981 for conspiring to blow up a Nashville synagogue.

j. *State of California v. Larry Mettert,* No. 106–92 (Merced Co.Super.Ct.). Mettert, an organizer for the California Realm of the Invisible Empire, was convicted April 2, 1981, on charges of brandishing a weapon after he chased a school bus carrying black and white students and threatened them with a shotgun.

k. *United States v. Grady Herman Rector, Jr.,* No. STCR8530 (W.D.N.C.). Rector, a member of the splinter KKK group called the White Knights of Liberty, pleaded guilty in July 1985 to civil rights violations involving attempts to intimidate interracial couples

by burning crosses and shooting into their homes.

l. *United States v. Fred Holmes, et al.,* No. CR79M00083E (N.D.Ala.). Thirteen defendants, all members of the United Klans of America, pleaded guilty to or were convicted of civil rights violations in June 1979 in connections with acts of intimidation and violence against blacks in east central Alabama during late 1978, including a shotgun attack on the home of the president of the Alabama State NAACP.

m. *United States v. Jerry Douglas Suits, et al.,* No. STCR8537 (W.D.N.C.). Suits, a titan or regional leader of the North Carolina-based White Knights of Liberty, and eight other members were indicted September 26, 1985, on charges of intimidating blacks and whites who were living or socializing together. The charges against Suits and two other defendants were dropped due to a faulty indictment, but they were re-indicted January 7, 1986. All nine eventually pleaded guilty.

n. *United States v. Bruce Carroll Pierce, et al.,* No. CR85–001M (W.D.Wash.). Pierce and 22 other members of the radical white supremacist gang, the Order, were charged on April 22, 1985, with running a criminal enterprise in violation of federal racketeering laws. The group allegedly plotted to overthrow the federal government. Of the 23 indicted, at least five—Frank Lee Silva, David Eden Lane, Randall Paul Evans, William Anthony Nash and George Franklin Zaengle—were Klansmen. All 23 pleaded guilty or were convicted.

o. *United States v. James Llewellyn Knowles,* No. CR83–00028 (S.D.Ala.). Knowles pleaded guilty to violating the civil rights of a black youth whom Knowles and another Klansmen—both high leaders in the United Klans of America, Alabama Realm—picked off a Mobile, Alabama street at random and bludgeoned to death.

p. *State of Alabama v. Henry Francis Hays,* No. CC83–3547 (Mobile Co.Cir. Ct.). Hays, a local leader of the Mobile United Klans of America was convicted of murder in December 1984 in the death of Michael Donald. Fellow Klansman James Knowles (see above) testified that he and Hays abducted Donald at random, took him to a secluded area and beat and choked him to death. They later hanged Donald's body in a tree across the street from Hay's home in downtown Mobile.

q. *United States v. Ralph D. Morgan, Gary A. Oberheim,* No. CR70000690103P (W.D.Ky.). Morgan pleaded guilty to and Oberheim was convicted of the May 26, 1978, firebombing of the home of a black civil rights leader in Paducah, Kentucky.

r. *United States v. Joe M. Garner, Roy Thomas Downs, Charles Bailey,* No. CR85–23–N (M.D.Ala.). Garner, Downs and Bailey are member of the Knights of the KKK. They pleaded guilty in February 1985 to a civil rights violation in the arson of the offices of the Southern Poverty Law Center in Montgomery, Alabama. Garner was a member of the Knight's Imperial Council, the group's governing body.

3. Sylvania is a small unincorporated community located in Jefferson County, Kentucky and contains approximately 75 homes. All of its residents, except the plaintiffs, were white on June 30, 1985, the date of the arson.

4. Sylvania has a long history of hostility directed toward black and interracial couples. Incidents of harassment, cross burning, and the destruction of property (including the burning of an automobile) have been reported to the police and, on occasion, police protection has been provided to black residents.

5. Approximately 60 days prior to the June 30, 1985, arson of the plaintiffs' home, word spread in the Sylvania community that a black couple was in the process of purchasing a home in the area.

6. On May 27, 1985, a group of Klan leaders met at Nolin Lake in Jefferson County, Kentucky and formed a Klan Confederation. Klansmen Sherman Adams and Alex Young were elected officials of this group. According to Klansman Adams, Alex Young was at the meeting representing a Klan "police group."

7. Alex Young is the leader of a Klan group affiliated with the Invisible Empire, Knights of the Ku Klux Klan. The group, named the Confederate Officers' Patriot Squad (C.O.P.S.), has operated out of Young's home and is composed of approximately forty members. Jefferson County law enforcement officers have made up approximately half of this membership total.

8. C.O.P.S. has a bank account in which funds, collected from members of various law enforcement agencies in Jefferson County, Kentucky, have been deposited during the past twelve months.

9. Klan member James Kennedy has stated under oath that he and at least one other Klan member posted about 150 Klan signs and distributed Klan literature in Sylvania two months before the June 30, 1985, arson of the plaintiffs' home. The signs and literature were used to promote a rally at which the Alabama-based Imperial Wizard of the Invisible Empire, Knights of the Ku Klux Klan, was to appear. The rally was cancelled because of racial problems, but was later rescheduled and held in Sylvania on August 24, 1985.

10. The August 24, 1985, Klan rally took place on the property of Charles Vessels, the brother-in-law of a white male who has pleaded guilty for his part in the June 30, 1985, arson of the plaintiffs' home. A few hours prior to the rally, unknown persons set fire to the plaintiffs' home for a second time.

11. Klan member James Kennedy has admitted that he had contact with Alex Young prior to the June 30, 1985, arson, and that he obtained Young's unlisted phone number from other Klan members.

12. Calls were made from Young's residence to Klansman Sherman Adams at an unlisted phone number on June 23, 1985, seven days prior to the first arson, and on August 17, 1985, seven days prior to the second arson. Another call was made on August 24, 1985, a few hours after the second arson.

13. After the June 30, 1985, arson, Alex Young sought information about the blaze from Klan member Norman Davis. Young also contacted a member of the Jefferson County Police Department and assured the officer that the Klan had nothing to do with the arson. Sergeant Douglas Wayne Hawkins, an officer assigned to the arson investigation who grew up in Sylvania, agrees that the first fire was probably not Klan related. He did not investigate the second fire.

14. After the June 30, 1985, arson of the plaintiffs' home and prior to this action being filed, a Louisville television station ran a story exposing Alex Young as a Klan member. At the time, he was a helicopter pilot in the Jefferson County Police Department's traffic control division. On August 1, 1985, he was transferred to the department's property room. On November 21, 1985, Young was dismissed from the force on grounds that he had mislead his supervisors concerning his continued membership in the Ku Klux Klan, that he had distributed hate literature, and that he had raised funds and collected money from fellow officers without the permission of the Chief of Police.

15. An employee at a private Louisville pilot's club of which Alex Young was a member has testified that Young discussed a plan to set-up the only black member of the club on drug charges because the black pilot was married to a white woman.

### Ruling

Having considered the arguments made at the contempt hearing and the additional findings of fact stated above, the court adopts the conclusions of law contained in its October 2, 1985, Memorandum and Opinion and holds Alex Young in civil

contempt for willfully refusing to produce the Klan membership list.

An appropriate Order shall accompany this Memorandum Opinion.