Hector ALBURQUERQUE,
Petitioner-Appellant,

v.

Raymond BARA, Superintendent of Queensboro Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents-Appellees.

No. 967, Docket 80–2023.

United States Court of Appeals,
Second Circuit.

Argued March 26, 1980.

Decided July 31, 1980.

Oren Root, Jr., The Legal Aid Society, New York City (William E. Hellerstein, The Legal Aid Society, New York City, of counsel), for petitioner-appellant.

Clement H. Berne, Asst. Atty. Gen., of the State of New York, New York City (Robert Abrams, Atty. Gen., of the State of New York, George D. Zuckerman, Asst. Sol. Gen., of the State of New York, New York City, of counsel), for respondents-appellees.

Before KAUFMAN and MESKILL, Circuit Judges, and BRIEANT,* District Judge.

MESKILL, Circuit Judge:

Hector Alburquerque appeals from a judgment entered in the United States District Court for the Eastern District of New York (Platt, J.) dismissing his petition for a writ of habeas corpus. Alburquerque had sought release from New York State custody following his conviction for robbery in the first degree on the ground that the exemption of women from jury service as provided under a then operative state statute denied him his right to a representative venire as guaranteed under the Sixth and Fourteenth Amendments to the Constitution. After Alburquerque's quest for relief had travelled the tortuous path detailed below, Judge Platt dismissed the petition finding that Alburquerque had not adequately raised the objection before trial as required under a procedural provision of state law and that habeas corpus relief was therefore barred under the holding of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We disagree with that conclusion and, for the reasons set forth below, vacate the judgment and remand to the district court for findings of fact and conclusions of law on the merits of Alburquerque's claim.

I.

[FACTUAL BACKGROUND]

Prior to commencement of his trial in Supreme Court, Queens County, Alburquer-

---

* Honorable Charles L. Brieant, Jr., United States District Judge for the Southern District of New York, sitting by designation.

que, in accordance with New York Criminal Procedure Law § 270.10 (McKinney)[1] interposed a timely, written challenge to the composition of his prospective jury panel. In essence, he asserted that the array from which his panel would be drawn was not fairly representative of the community as a whole because women, though summoned and required to appear for jury duty, were permitted under a then operative provision of state law[2] to claim an exemption. This procedure, in Alburquerque's view, necessarily resulted in the substantial underrepresentation of women in the array and violated the Sixth Amendment guarantee of a properly selected jury, a right which had been elucidated only two weeks earlier in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In striking down a Louisiana statute exempting all women from jury service, that decision held that methods of constituting venires which, to a significant degree, resulted in the systematic exclusion of distinct groups were repugnant to the constitutional right to jury panels drawn from a fair cross-section of the community. The Supreme Court subsequently decreed that a prima facie violation of the fair cross-section requirement had been established where a petitioner demonstrated that due to systematic exclusion in the jury selection process, a jury venire composed of only 15 percent women was chosen from a community where 54 percent of the population was female. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

At the ensuing pretrial hearing Alburquerque orally elaborated upon this contention. Because of its bearing upon the waiver issue, we set forth at some length the relevant portions of the colloquy among Alburquerque's counsel, the assistant district attorney and the court:

[THE COURT]: I gather that this is a challenge to the panel, jury panel, on the ground that there's not a fair cross section of the community in that eligible women are grossly under-represented therein.

Now what do you want to say?

[DEFENSE COUNSEL]: I would like to say first sir, in support of that motion, the panel that is going to eventually try these defendants; while they are not before the Court now, they are composed of jurors who have I believe concededly been picked according to the New York State law which grants a blanket exemption to women who choose to take that exemption, and that a woman, for no other reason aside from her sex, has absolute right to it.

I think that controverts the recent Supreme Court case, *Taylor vs Louisiana*, where the Louisiana Statute, although in the reverse where the concept in Louisiana was that all women were not called for jury duty unless they specifically re-

---

1. New York Criminal Procedure Law § 270.10 provides:

    1. A challenge to the panel is an objection made to the entire panel of prospective trial jurors returned for the term and may be taken to such panel or to any additional panel that may be ordered by the court. Such a challenge may be made only by the defendant and only on the ground that there has been such a departure from the requirements of the judiciary law in the drawing or return of the panel as to result in substantial prejudice to the defendant.

    2. A challenge to the panel must be made before the selection of the jury commences, and, if it is not, such challenge is deemed to have been waived. Such challenge must be made in writing setting forth the facts constituting the ground of challenge. If such facts are denied by the people, witnesses may be called and examined by either party. All issues of fact and law arising on the challenge must be

tried and determined by the court. If a challenge to the panel is allowed, the court must discharge that panel and order another panel of prospective trial jurors returned for the term. (Footnote omitted.)

2. New York Judiciary Law § 599 provides in pertinent part:

    Each of the following persons only, any inconsistent provision of law to the contrary notwithstanding, although qualified, is entitled to exemption from service as a juror upon claiming exemption therefrom:

    \* \* \* \* \* \*

    7. A woman.

The jury panel in this case was selected in accordance with this statute which was repealed shortly before the challenge in this case. N.Y.Judiciary Law § 599(7) repealed, effective February 5, 1975.

quested to be called; the results were the same.

Now I might further add, Your Honor, that I don't believe it truly matters what type of panel is brought over here this morning. I would submit to Your Honor that even if eighty percent of the panel that's brought over here this morning were women, the panel would still be defective in that the women who would be brought over would be women who had specifically refused their exemption and who are acting in the role of professional jurors.

\*   \*   \*   \*   \*   \*

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, we would take a position that the panel that is going to be before you is constitutionally drawn within the mandate of the *Taylor* case.

It's pointed out that unlike Louisiana, where women did not have to claim an exemption, in this state women do have to affirmatively claim an exemption.

I would also point out that counsel, in his moving papers, neither counsel points out any facts which would indicate that this panel is going to be affirmatively grossly under-represented by women in this case.

[THE COURT]: Well, the Court understands that the basis for the application is predicated on the recent United States Supreme Court decision in Louisiana.

\*   \*   \*   \*   \*   \*

Well, the Court takes the position that the law that was declared unconstitutional regarding the women jurors in Louisiana, is a different statute to that which we have in New York.

In other words, there is a difference between the Louisiana Code of Criminal Procedure provision and the provisions in our Judiciary Law, which is Section 599, Subdivision 7.

And our statute does not automatically prevent women from serving. It provides that a woman is entitled to exemption from service upon claiming exemption therefrom.

That statute is different than the Louisiana matter, where a woman would not be selected for jury service unless she made an affirmative declaration of her desire to so do.

And accordingly, the Court takes the position that the constitution of the panel that's coming over is proper and legal, and the application is denied, with exception to each defendant.

After the panel entered the courtroom, the trial judge, at the behest of Alburquerque's counsel, noted that of 70 prospective jurors, seven were women. The objection was renewed in light of this statistic, but was again denied.

The case was tried and Alburquerque, together with a co-defendant who is not a party to this proceeding, was adjudged guilty of robbery in the first degree. Alburquerque appealed to the Appellate Division, Second Department, where he argued, inter alia, that the trial court erred in denying his objection to the composition of the jury panel without affording him a suitable opportunity to air his claim. The Appellate Division affirmed the conviction without opinion, *People v. Alburquerque*, 61 App. Div.2d 1141, 402 N.Y.S.2d 699 (2d Dept. 1978), and the Court of Appeals denied leave to appeal, *People v. Alburquerque*, 44 N.Y.2d 853, 406 N.Y.S.2d 1030, 378 N.E.2d 128 (1978).

While still in state custody on Long Island, Alburquerque filed a petition for a writ of habeas corpus in the court below premised solely upon the alleged deprivation of Sixth and Fourteenth Amendment rights resulting from the availability to women of an exemption from service under the New York jury selection statute. Although Alburquerque's objection had been raised in writing and prior to trial, respondents urged that because Alburquerque had not at that time submitted detailed figures and statistics regarding the number of women willing to serve on juries, he had failed to comply with Criminal Procedure Law § 270.10(2)'s requirement that ". . . the facts constituting the ground

of challenge . . ." be set forth. Consequently, respondents argued that relief was barred under the doctrine of *Wainwright v. Sykes, supra.*[3] Alternatively, respondents asserted that owing to Alburquerque's failure to submit such data to the state trial judge, he had not raised a challenge of constitutional dimension, that the state courts had not been presented an opportunity to rule upon the matter and that consequently, Alburquerque had not exhausted his state remedies.

Recognizing the expertise of the state courts in deciding whether their own statutes have been sufficiently followed and in view of the silence of the state appellate courts on the subject, Judge Platt attempted to fashion a procedure whereby the local courts would render a determination on the limited issue of Alburquerque's waiver of objection to the composition of his jury panel. While retaining jurisdiction over the case, the district judge invited the state courts to make an express finding on the issue of Alburquerque's compliance with the pretrial objection provision of Criminal Procedure Law § 270.10. In effect, the issue was remanded to the state courts with a request to rule explicitly on "the question of whether petitioner has waived as a matter of state law his right to a hearing on the issue of whether the procedure employed to select a jury . . . comported with the applicable constitutional requirement . . . ." In the event it was concluded that there was no waiver of objection, the state courts were further invited to pass upon the merits of Alburquerque's claim.

Thereafter, the Appellate Division issued an order which held, in essence, that Alburquerque had not waived his objection to the composition of the jury panel, but that his challenge, as framed at the pretrial

hearing, was simply not of constitutional magnitude. The court in pertinent part stated:

> If defendant had contended upon the trial that he was deprived of a fair trial because the jury was not selected from a representative cross section of the community, and specifically because women were systematically excluded from the jury pool and that this violates his rights under the Sixth and Fourteenth Amendments to the Federal Constitution, we would have remanded the case to the Criminal Term to take testimony on that issue. However, in this case the only objection that defendant made was that the pool from which the panel was drawn and the resulting panel did not have enough women on it. Therefore, we did not reach the constitutional question.

Interpreting this ruling as a finding of compliance with the procedural requirements of Criminal Procedure Law § 270.10 and attempting to satisfy all portions of the district court's request on remand, Alburquerque next moved in the State Supreme Court for a hearing in which he could obtain an adjudication of his claim. The State Supreme Court held, however, on the basis of the Appellate Division's order, that Alburquerque's failure to plead a constitutional challenge before trial precluded the right to a hearing in subsequent proceedings.

Returning to the district court after the state proceedings, Albuquerque argued that the federal court should address the merits of his claim. With the somewhat dubious benefits of the additional state court opinions, however, Judge Platt held that Alburquerque's pretrial challenge to the jury panel was a "general objection" only and

---

3. In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the defendant had failed to comply with Florida's contemporaneous-objection rule which required challenges to illegally obtained statements to be raised before or at trial. Although the lower courts had ordered the state courts to hold a hearing on the voluntariness of defendant's statements, the Supreme Court reversed, rejecting the deliberate bypass or knowing waiver standard of

*Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Court instead applied the rule for grand jury challenges set out in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), holding that a failure to comply with a state procedural rule constituted an independent and adequate ground barring federal habeas corpus relief unless the petitioner could establish cause for the failure and resulting prejudice.

that he had failed to raise sufficiently a constitutional issue which would have entitled him to a more extensive hearing. Under these circumstances, the court ruled that an adequate state procedural ground barred collateral attack in the federal court upon the jury selection process. *Wainwright v. Sykes, supra.* Judgment was entered dismissing the petition, although Alburquerque was granted a certificate of probable cause.

## II.

### [WAIVER OF OBJECTION THROUGH NONCOMPLIANCE WITH STATE PROCEDURAL RULE]

The court below, and it would seem the state courts as well, have in their treatment of this case consistently confused two separate inquiries: that is, they have blurred the distinction between the question of whether there has been a waiver of objection through noncompliance with procedural rules and the issue of whether Alburquerque's initial challenge to the method employed in selecting his jury panel has presented a constitutional controversy. Plainly, a party may raise a challenge without implicating federally protected rights or interest, but it does not follow that in that circumstance one has failed to satisfy procedural prerequisites for voicing the objection. The state court's view that Alburquerque did not mount a constitutional challenge does not mandate a finding that he flouted procedural requirements for raising the issue.

■ Compliance with a state's pretrial motion rule is a question of state law, *see Wainwright v. Sykes, supra*, while the issue of whether one has asserted a constitutional claim is determined under federal law, *Street v. New York*, 394 U.S. 576, 583, 89 S.Ct. 1354, 1361, 22 L.Ed.2d 572 (1969). In the instant case, we find that Alburquerque fully satisfied Criminal Procedure Law § 270.10, and further hold that in so doing, he raised a challenge of constitutional proportions to New York's then operative jury composition statute.

### A. *Compliance With Procedural Requirements*

■ We disagree with the district court's finding that relief is barred by failure to comport with state procedural requirements for two reasons. First, in our view, the state courts' opinions do not establish in any sense a disregard of the dictates of Criminal Procedure Law § 270.10. Second, our own analysis of the pretrial proceedings in the trial court leads us to conclude that there has been substantial compliance with that statute.

As to the former, we note that the state courts never expressly found a contravention of their procedural requirements. Neither the Appellate Division nor the Supreme Court stated that there was disregard of any of the requirements set forth in Criminal Procedure Law § 270.10—namely, that the objection be in writing, be raised before trial, and cite the facts constituting the ground upon which it is based. To the contrary, the Appellate Division's statements made in response to Judge Platt's remand request did not indicate that there had been a waiver of objection but merely demonstrated that the trial court had acted correctly in declining to engage in extended fact-finding since the claim, as framed by Alburquerque, did not warrant such consideration. Additionally, refusing the motion for a hearing, the State Supreme Court subsequently concluded that the Appellate Division's opinion intimated that Alburquerque had not waived his right to a hearing. Thus, the state courts have never adopted respondents' position that Alburquerque's initial failure to submit sufficient data was tantamount to noncompliance with Criminal Procedure Law § 270.10. We express no view on what effect a clear and unambiguous state court finding of noncompliance would have upon us; it suffices for present purposes to observe that no reasoned, factually substantiated opinion has been rendered by the state courts holding that Alburquerque did not meet the procedural requirements for challenging the method of composing his jury panel.

Furthermore, based on our own analysis of the proceedings below, we find that there was substantial compliance with applicable state law. *Ronson v. Commissioner of Correction*, 604 F.2d 176 (2d Cir. 1979). Without conceding the importance of statistics to the viability of Alburquerque's claim, we note that it cannot be determined from the record whether he had, prior to trial, compiled sufficient statistics with which to vindicate his claim. Plainly, he was cognizant of the importance of mathematical computation since he requested that the trial judge declare for the record the number of women who eventually appeared in the jury panel.

Moreover, a review of the colloquy between court and counsel reveals that Alburquerque simply was not afforded the opportunity to make a factual presentation. The court, aware of the basis of his claims and indicating familiarity with the holding in *Taylor v. Louisiana, supra*, rather tersely distinguished, on legal grounds, the New York statute from the Louisiana statute which had been struck down by the Supreme Court. In view of this dispositive ruling Alburquerque had no occasion to adduce facts and figures in support of his claim which, regardless of the data that might have been presented, had just been doomed by the ruling of the trial judge.

■ Whatever opportunity Alburquerque may have had to adduce pertinent information at the pretrial proceeding, and regardless of his readiness at that time to present detailed data, we hold that under the circumstances of this case the lack of statistical documentation was not, in the words of the statute, a failure to set forth "the facts constituting the ground of challenge." In our view, that critical phrase must be literally construed; objections must state the facts forming the theoretical underpinnings for the challenge. Such "facts," however, are obviously something other than the facts which are ultimately required to vindicate the claim and obtain relief. This is manifest in the plain language of Criminal Procedure Law § 270.10 which distinguishes between facts essential to the raising of an objection and those necessary to sustain it. *Wainwright v. Sykes, supra*, will bar habeas corpus review only when the former situation pertains.

Alburquerque has complied with the "facts" requirement of Criminal Procedure Law § 270.10 because he has stated the legal basis for his challenge, namely, the Supreme Court's holding in *Taylor v. Louisiana, supra*, and the assertion that the then prevailing New York jury composition statute, in operation, did not comport with the constitutional principle therein announced. Clearly, substantial documentation would have been required in order to validate his claim. However, since Alburquerque set forth the facts upon which his challenge is based, he has preserved the matter for collateral attack in the federal courts.

■ We find further support for our interpretation of the statute in the policies underlying the deference which *Wainwright v. Sykes, supra*, compels us to give to state procedural rules. The stated purpose of requiring timely and adequate pretrial objections is to alert the state to the challenge so as to enable it to respond meaningfully, *People v. Parks*, 41 N.Y.2d 36, 390 N.Y.S.2d 848, 359 N.E.2d 358 (1976); *People v. Prim*, 40 N.Y.2d 946, 390 N.Y.S.2d 407, 358 N.E.2d 1033 (1976), and further to prevent the necessity of a second trial with its attendant logistical difficulties. *See Francis v. Henderson*, 425 U.S. 536, 540, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976), *citing Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (purpose of requiring pretrial objection to grand jury procedures). Alburquerque's objection satisfied those considerations: respondents were made aware of the fact of the challenge and its theoretical underpinnings, and thus had ample opportunity to respond in an appropriate manner.[4]

---

4. Our holding is buttressed further by consideration of the treatment of a similar issue in *County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The Supreme Court declined to find a procedural defect where a defendant had objected to a statutory

The New York precedents cited to us by respondents do not persuade us to the contrary. Those cases do not involve adherence to the requirements of Criminal Procedure Law § 270.10; rather, they discuss the sufficiency of the evidence presented in support of the merits of those claims. *People v. Huffman*, 41 N.Y.2d 29, 390 N.Y.S.2d 843, 359 N.E.2d 353 (1976); *People v. Parks, supra; but see People v. Liberty*, 67 App. Div.2d 776 (3d Dept. 1979). If one has failed to present to the state court sufficient evidence to obtain relief on the merits but has otherwise complied with procedural requirements necessary to raise the claim, federal habeas corpus review will not be barred. *See, e. g., Collins v. Auger*, 577 F.2d 1107 (8th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979); *Thergood v. Tedford*, 473 F.Supp. 339 (D.Conn.1978). Accordingly, we find compliance with the procedural requirements of Criminal Procedure Law § 270.10.

B. *Assertion of a Federal Right and Exhaustion of State Remedies*

■ Even though Alburquerque's challenge to the jury selection system under the prevailing New York statute met the procedural requirements of Criminal Procedure Law § 270.10, the district court would not have had jurisdiction over the matter unless a federal or constitutional issue had been presented for state adjudication. *Johnson v. Metz*, 609 F.2d 1052, 1055 (2d Cir. 1979); *see also Gayle v. LeFevre*, 613 F.2d 21, 22–23 (2d Cir. 1980). "The issue whether a federal question was sufficiently and properly raised in the state courts is itself ultimately a federal question, as to which this Court is not bound by the decision of the state courts." *Street v. New York, supra*,

394 U.S. at 583, 89 S.Ct. at 1361 (footnote omitted).

Even a cursory review of the transcript of the pretrial hearing reveals that a constitutional right had been invoked plainly and unambiguously. At the very outset of the proceeding, Alburquerque explicitly predicated his challenge on the Supreme Court's holding in *Taylor v. Louisiana, supra*, a case construing the right to trial by jury in light of a state jury composition procedure which operated to exclude women from the venire. The remarks of both the assistant district attorney and the court indicated an understanding that the issue posed involved a federal constitutional right. Perhaps most significantly, the matter was disposed of not upon any finding of nonconformity with state procedure, but rather by distinguishing the New York jury selection statute from that condemned on constitutional grounds in *Taylor v. Louisiana, supra*. Under the circumstances, it is difficult to conceive how a federal right could be asserted more forthrightly or directly.

As Alburquerque argued in his brief to this Court, the only clear differences between his formulation of the issue at trial and the Appellate Division's formulation on remand of a proper constitutional challenge are the absence of the words "systematically excluded" and the specific allegation of deprivation of a fair trial. We refuse to give talismanic qualities to those terms. As the Supreme Court noted in *Street v. New York, supra*, 394 U.S. at 584, 89 S.Ct. at 1361, *quoting Bryant v. Zimmerman*, 278 U.S. 63, 67, 49 S.Ct. 61, 63, 73 L.Ed. 184 (1928):

There are various ways in which the validity of a state statute may be drawn in question on the ground that it is re-

presumption for the first time after the jury announced its verdict. Supporting its conclusion, the Court cited two exceptions that have developed in New York to a contemporaneous objection policy which, although not applicable in *County Court v. Allen*, might have barred federal consideration of an improperly raised issue. First, the Court noted that the state courts often allowed review of errors that affect a "fundamental constitutional right." Second, New York courts also have considered

federal constitutional claims on appeal if a similar claim was clearly raised. *Id.* at 151 n. 10, 99 S.Ct. at 2221 n. 10. The Court also cited the policy underlying the decision in *Wainwright v. Sykes*, of according "appropriate respect to the sovereignty of the states in our federal system." *Id.* 99 S.Ct. at 2223. The proceedings and the result in the instant case certainly demonstrate sincere efforts to effectuate this policy while at the same time safeguarding precious constitutional rights.

pugnant to the Constitution of the United States. No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented.

The respondents make the additional argument that Alburquerque has not exhausted his state remedies because the New York courts were not given a fair opportunity to pass on the challenge to the jury panel. In light of the discussion above, we find this argument to be without merit.

Accordingly, we hold that the court below erred in dismissing the petition for failure to comply with state procedural rules, and that no further impediment to the court's jurisdiction exists since the constitutional issue, as presented below, was properly raised in and rejected by the state courts.

### III.

#### [PROCEEDINGS ON REMAND]

■ Having proceeded this far, we would customarily adjudicate the merits of Alburquerque's claim since we are in as favorable a position as the court below to make determinations of law. A review of the governing authorities indicates that vindication on the merits of the claim presented requires additional fact-finding, a procedure for which we are not well suited, and we consequently must remand this action. *Anderson v. Casscles*, 531 F.2d 682 (2d Cir. 1976); 28 U.S.C. § 2254(d)(3).

*Taylor v. Louisiana, supra,* held that jury composition methods which, to a significant degree, result in the systematic exclusion of distinctive groups are repugnant to the Sixth Amendment unless there exist compelling state interests which justify disparities between the make-up of the venire and the community from which it is drawn. *Id.,* 419 U.S. at 538, 95 S.Ct. at 701. Subsequently, in *Duren v. Missouri, supra,* 439 U.S. at 360, 99 S.Ct. at 666, the Court discussed the degree of permissible disparity between the composition of the venire and the community from which it is drawn, stating: "systematic exclusion of women that results in jury venires averaging less than 15% female violates the Constitution's fair-cross-section requirement."

Consequently, we remand to the district court to consider the statistical deviation between the percentage of women in the community at large and as represented in the array from which Alburquerque's panel was chosen. Additionally, respondents must be afforded the opportunity to aver any compelling state interest which might excuse disproportionate representation of women, if such is found to exist.

Finally, the court may wish to consider whether the claim is barred by the Supreme Court's holdings regarding the retroactivity of its pronouncements concerning methods of jury composition. In *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Court's prior decision in *Taylor v. Louisiana, supra,* was held inapplicable to convictions obtained prior to the date of *Taylor's* announcement, and in *Lee v. Missouri,* 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), the Court stated that the application of the principle of *Duren v. Missouri, supra,* was retroactive to the issuance of the opinion in *Taylor.* In the instant case, the array was summoned prior to *Taylor,* but apparently the panel was formed and the petit jury selected and sworn subsequent to the announcement of that opinion. The court below may thus wish to consider whether Alburquerque's conviction was obtained from a jury which, under applicable law, was "empanelled" or "sworn" upon being summoned for duty, and was thus a pre-*Taylor* jury, or whether the operative event was the actual administration of the oath to his petit jury, as to which the *Taylor* holding would then apply.

The judgment of the district court is vacated and the case remanded for further proceedings not inconsistent with this opinion.

BRIEANT, District Judge (concurring).

I concur in the result reached by the majority, but do so for different reasons.

*Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) bars federal habeas corpus review if state procedural requirements for raising trial objections have not been met. I agree with the majority that the procedural requirements of New York Criminal Procedure Law § 270.10 (McKinney) were satisfied. However, despite the state trial court's ruling on the merits, a separate state "procedure," namely, the method for raising a federal constitutional claim, was not satisfied. The Appellate Division of the Supreme Court of the State of New York, Second Department ("the Second Department"), in a memorandum decision which the district court described, charitably, as "opaque," held in a subsequent collateral proceeding that the constitutional claim had not been properly raised. (A. 20). Yet, I do not think that this failure restrains the federal courts from considering Alburquerque's constitutional claim here. *Wainwright* cannot be interpreted to grant states a blanket license to set up vague or unreasonable procedural obstacles to the assertion of a federal right.

State procedures must satisfy the due process clause of the Fourteenth Amendment. The state procedure which the Second Department imposed here in this case does not. The Second Department's "opaque" decision held that Alburquerque did not properly raise a constitutional issue, but left unclear what the unsatisfied state requirements are. Our independent research suggests none. There is some suggestion, as pointed out by the majority, that it was appellant's failure to state or include two elements in his claim before the trial judge which resulted in a failure to satisfy New York's "contemporaneous objection rule," as interpreted by the Second Department. Appellant did not allege that he was [to be] deprived of a fair trial, and he did not use the talismanic buzz words, "systematically excluded" with respect to omission of women in the venire.

The Supreme Court in *Street v. New York,* 394 U.S. 576, 584, 89 S.Ct. 1354, 1361, 22 L.Ed.2d 572 (1969) stated that:

"Insofar as the question of sufficient presentation is one for our independent decision, the controlling principle was set forth in the leading case of *New York ex rel. Bryant v. Zimmerman,* 278 U.S. 63, 67, 49 S.Ct. 61, 63, 73 L.Ed. 184 (1928):

'There are various ways in which the validity of a state statute may be drawn in question on the ground that it is repugnant to the Constitution of the United States. No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented.'"

A state requirement so opaque as to fail to give notice that a litigant must use certain phrases in the nature of mumbo-jumbo to assert his federal right offends the due process clause of the Fourteenth Amendment. Nothing in *Wainwright, supra,* bars federal review in this case. An adequate opportunity was given to the state courts to rule on the federal issue, in fact, the state trial judge ruled on the merits of the claim.

The majority opinion (at 769) quotes the interchange between the state trial court and defense counsel, and I need not repeat it. It is clear that the state trial judge knew and understood the basis for the challenge. He said so, in so many words. He attempted to distinguish the New York statute from the Louisiana statute found unconstitutional in *Taylor.* That distinction was a colorable one, but was ultimately rejected by the Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). His decision on this important point was articulated more clearly than is often possible for trial judges on the firing line, so to speak, who must make prompt and understandable decisions without opportunity for reflection or research. At the conclusion of his explication, Justice

Farrell said that he found the panel of jurors, apparently not yet present in the courtroom, to be "proper and legal." He said that the application was denied, "*with exception to each defendant.*"

In New York, as in a federal court, there is no purpose any more in granting "an exception" under such circumstances. See New York Crim.Proc.Law § 470.05(2), which reenacts prior provisions in effect in New York since 1946. When a trial judge gives "an exception" today, as Justice Farrell did here, it is no more than a polite and customary way to indicate to counsel that his position is known and understood to the trial court, and that it is not necessary to waste time with any further discussion. This judicial convention is well-known, and generally when a trial attorney has carried the discussion to the point where he has been given "an exception" we should conclude that he has said and done all that is necessary to make the point, and that the Judge has understood the intended point. No further words or expressions of ideas is necessary. The "opaque" opinion of the Second Department to the extent that it holds otherwise, is not in keeping with the accepted practice in all trial courts convened in New York, state and federal.

There is no reason to believe that Alburquerque did not receive a fair trial before an impartial jury. There is no logical basis to think that a male robber would get more sympathy from female jurors. Robbery is not a crime having sexist overtones. As has been remarked in another context, just as there is no perfect crime, there is no perfect trial, and, I add, no perfect jury. But I would merely direct issuance of the writ on remand. It does not appear that anything could be done on remand to the district court which would save this conviction; the cause is lost, and any such appeal to logic has been foreclosed by the Supreme Court.

This case is unlike *Anderson v. Casscles*, 531 F.2d 682 (2d Cir. 1976), where the issue was the exclusion from jury service of adult students. No federal court had ever dealt with that issue, nor would the record support a conclusion that the group had been automatically excluded. That is not the situation here. *Duren* held that:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364, 99 S.Ct. at 668. Applying this test, I fail to see any possibility that the appellant could be denied the relief he seeks. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), in establishing that women are a distinctive group, settles the first point of inquiry. The balance of the *Duren* claim is resolved by the fact finding by Judge Broderick of the Southern District in *Bowens v. Commissioner of Correction of the State of New York*, 76 Civ. 2487–VLB (December 18, 1978). Appendix at 32. Judge Broderick found that in February 1975 when appellant's trial was held, the percentage of women on New York jury panels was approximately three (3%) percent. In May of that year it was only sixteen (16%) percent. In *Duren, supra*, a venire having almost fifteen (15%) percent women was held to violate a defendant's rights.

Appellees have not challenged the data found by Judge Broderick, or similar statistical information from other sources contained in appellant's brief. However, they argue that appellant has not claimed that the potential jurors or the panel from which the trial jury was chosen received qualifying notices from the jury clerk prior to *Taylor*.

The majority suggests that the district court on remand determine whether the present claim is barred as a retroactive application of *Taylor*. This is purely a legal issue raised by appellee, and there is no reason why we should not deal with it at

this time. The majority directs the district court on remand to consider whether "Albuquerque's conviction was obtained from a jury which, under applicable law, was 'empanelled' or 'sworn' upon being summoned for duty, and was thus a pre-*Taylor* jury, or whether the operative event was the actual administration of the oath to his petit jury, as to which the *Taylor* holding would then apply." At 775. Here too I perceive a lost cause. *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) expressly held that:

> The question is whether our decision in *Taylor v. Louisiana* is to be applied retroactively to other defendants *whose opportunity to raise a timely objection to the jury-selection procedures had passed as of the date of our decision in Taylor.* We hold that *Taylor* is not to be applied retroactively, as a matter of federal law, to convictions obtained by juries empaneled prior to the date of that decision. *Id.* at 32, 95 S.Ct. at 705.

A New York jury is empanelled when sworn. Under New York Criminal Procedure Law § 270.10, such an objection is required to be made before the selection of the petit or trial jury commences. Then, "[i]f a challenge to the panel is allowed, the court must discharge that panel and order another panel of prospective trial jurors returned for the term." Appellant made a timely objection before the trial commenced, and complied with § 270.10. The challenge was made, the jury selected and sworn, all after the *Taylor* decision, and appellant's trial counsel cited *Taylor* to the trial judge by name.

In view of the above quoted portion of *Daniel,* and the subsequent gloss on *Daniel* in *Lee v. Missouri,* 439 U.S. 461, 462, 99 S.Ct. 710, 711, 58 L.Ed.2d 736, stating that *Taylor* is "inapplicable to cases in which the [trial] jury was sworn prior to the date of that decision," I would hold that appellant's trial was post-*Taylor.*

On the record before us, a remand is not necessary to establish that the under-representation of women resulted from their systematic exclusion. There has been no suggestion of any other cause. Nor is there any likelihood, in view of *Duren,* that New York could prove any compelling state interest which would satisfy the Supreme Court.[1]

For the foregoing reasons, I would reverse and direct issuance of the writ of habeas corpus.

1. The majority would remand for the additional purpose of allowing New York to demonstrate any "compelling state interest" which justified the disproportionately small number of women on appellant's venire. None comes to mind. Implicit in the Supreme Court's ruling that the *Taylor* rule is not applicable to cases in which the trial jury was sworn on or prior to January 21, 1975, is the converse proposition that it would be applicable to a criminal trial commencing after that date. In the five counties of New York City alone there were 1,581 felony jury trials commenced in 1975, or an average of 132 per month. It would take weeks, or even months, to qualify and summon a jury panel which would comply with the newly imposed rule, a point which could hardly have escaped the notice of the learned Supreme Court Justices. This implies that it was the intention of the Supreme Court that on January 22, 1975 in New York, Louisiana and other states, everything stop for tea, in the various criminal trial parts. Thereafter, the precious trial time of state trial judges, prosecutors and defenders would be lost for weeks or months until a valid jury could be empanelled. The scheduling and planning of trial counsel with respect to locating witnesses and making them available would be set at naught. Defendants detained for want of bail would have the unpleasant choice of sacrificing a newly found constitutional right, or remaining in durance until a new jury pool could be constituted. Although absurd, these results were obvious, and can hardly be regarded now as constituting a "compelling state interest" which could be shown on remand to justify denial of the writ in this case.